This is an appeal by the Alabama Insurance Guaranty Association ("Association") from an adverse order in the Association's declaratory judgment action against Sandra K. Stephenson, Billy Stephenson, Morris Cummings, and Blue Cross-Blue Shield of Alabama. We affirm.
The facts are uncomplicated, yet they pose a legal question of first impression in this jurisdiction. Sandra Stephenson was involved in an automobile accident with an automobile operated by Morris Cummings. She sustained injuries and, together with her husband, filed an action for damages against Cummings.
Cummings had a policy of liability insurance with Standard Fire Insurance Company of Alabama ("Standard"), which is in receivership and thus under limited operation by the Association. The limits of Mr. Cummings's liability insurance policy under the Standard policy were $10,000 per claim and $20,000 per accident.
Sandra Stephenson was enrolled in a self-funded employee health benefit plan at her place of employment, and Blue Cross-Blue Shield of Alabama ("Blue Cross") served as third-party administrator of that plan. To date, Blue Cross has paid $5,387.80 in medical benefits on behalf of Stephenson and has asserted a subrogation claim in the underlying action for damages against Cummings for the amount so paid.
The issue below was whether, under the terms of the statutes creating the Association, its liability was reduced by the amounts so paid, i.e., whether the Association was entitled to deduct from its obligation under the statute any amount paid to Stephenson by Blue Cross.
Under Code of 1975, § 27-42-2:
 "The purpose of this chapter [creating the Alabama Insurance Guaranty Association] is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payments and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies and to provide an association to assess the cost of such protection among insurers."
And, under § 27-42-3, the Act's applicability is defined:
 "This chapter shall apply to all kinds of direct insurance, except life, annuities, disability, accident and health, title, surety, credit, mortgage guaranty and ocean marine insurance."
Covered claims are defined in § 27-42-5:
 "(4) COVERED CLAIM. An unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after January 1, 1981 and (i) the claimant or insured is a resident of this state at the time of the insured event; or (ii) the property from which the claim arises is permanently located in this state. 'Covered claim' shall not include any amount due any reinsurer, insurer, *Page 1002 
insurance pool, or underwriting association, as subrogation recoveries or otherwise."
The Act also provides for non-duplication of recovery in § 27-42-12, which, in pertinent part, states:
 "(a) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his rights under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under such insurance policy." (Emphasis added.)
We restrict our opinion solely to the issue raised. The basic question this Court is asked to decide is whether the Blue Cross payments to Stephenson fall within the exception of § 27-42-3 and are thus not subject to the non-duplication provisions of § 27-42-12. We hold that the plan of health insurance administered by Blue Cross is a kind of direct insurance excepted by the provisions of §27-42-3, and thus benefits paid thereunder do not fall within the provisions of the Act, in particular the non-duplication section, § 27-42-12.
Not only does the clear language of the Act compel this result, but decisions of other jurisdictions also hold likewise.
In Harris v. Lee, 387 So.2d 1145 (La. 1980), the Supreme Court of Louisiana held that the "non-duplication of recovery" clause of that state's statute[1] did not apply to payments by health and accident insurers because such insurance was specifically excluded from the Act. Thus, the Louisiana Insurance Guaranty Association was not entitled to a credit for medical payments made to plaintiff by his group health insurer, in an action for damages brought against a defendant whose liability carrier was insolvent and thus whose liability had been assumed by the Insurance Guaranty Association.
A similar approach was taken by the Superior Court of Pennsylvania in Bullock v. Pariser, 311 Pa. Super. 487, 457 A.2d 1287 (1983). There the plaintiff had received a payment from her own disability insurance carrier following an injury. When the tort-feasor's insurance company became insolvent, the Pennsylvania Insurance Guaranty Association undertook the defense of the action that had been filed by plaintiff and maintained that it was entitled to setoff the sum paid to plaintiff by her own disability carrier.[2]
In reconciling the Act's provisions, that court held that the Association was not entitled to deduct the amount of the payment by the disability insurer from the amount due her under the Act; and the court explained at 457 A.2d 1290:
 "In Sands v. Pennsylvania Insurance Guaranty Association, 283 Pa. Super. 217, 423 A.2d 1224 (1980), this court addressed the question of when PIGA may be entitled to a setoff under § 503(a) of the Act. In that case, we noted that under the language of this section, an individual is not required to exhaust a claim unless it is 'also a covered claim.' Referring to the definitional *Page 1003 
portion of the statute, we found that a 'covered claim'
 " '. . . means an unpaid claim, including a claim for unearned premiums, which arises under a property and casualty insurance policy of an insolvent insurer . . .'
 "40 P.S. § 170.103(5)(a). (emphasis added). Sands, supra at 224, 423 A.2d at 1227.
 "We determined that the second sentence of § 503(a), providing for the reduction of any amount payable under the Act 'by the amount of any recovery under such insurance policy,' refers back to any recovery on a claim of the sort referred to in the first sentence of § 503(a), i.e. any 'covered claim.' Sands, supra at 225, 423 A.2d 1227-28. Mrs. Bullock's recovery from her disability insurer was not a 'covered claim,' because it did not result from the insolvency of any insurer. Therefore, § 503(a) does not apply.
 "This result is consonant with the purpose of the Act, which is, in relevant part, '. . . to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer.' 40 P.S. § 1701.102. The non-duplication of recovery provision of § 503 of the Act functions to prevent windfall judgments, such as might occur where, for example a tortfeasor's insurance company becomes insolvent, and a claimant seeks recovery on his own uninsured motorist coverage, as well as from PIGA as successor to the insolvent insurer. In such a situation, absent the provisions of § 503, a claimant might obtain a much greater recovery than he would have received had the tortfeasor's insurance company remained solvent. Such a double recovery would exceed the loss-prevention purposes of the Act. This is not the case here. Mrs. Bullock is in no better position than she would have been if Penn Mutual had remained solvent, and PIGA is not entitled to setoff."
As we have shown, the insurance guaranty statutes do not apply to health insurance policies, and thus, under the definitions, the claim filed by Sandra Stephenson with Blue Cross is not a covered claim. Accordingly, the non-duplication provision of § 27-42-12 does not apply. Similarly, Sandra Stephenson's receipt of Blue Cross benefits places her in no better position than she would have been in had Standard remained solvent and thus as potentially responsible in damages as its insolvency makes the Association. Thus, no windfall situation is present.
Let the judgment be affirmed.
AFFIRMED.
MADDOX, JONES, SHORES and HOUSTON, JJ., concur.
[1] Harris v. Lee, 387 So.2d at 1146:
"22:1386(1) states:
 " 'Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this Part shall be reduced by the amount of any recovery under such insurance policy.'
 "However, that section of the Insurance Guaranty Association Law is limited by LSA-R.S. 22:1377 which provides:
 " 'This Part shall apply to all kinds of direct insurance, except life, health and accident, title, disability, mortgage guaranty, and ocean marine insurance.' "
[2] The statutory provision, § 503(a), is almost identical to its corresponding Alabama provision, §27-42-12. Subsection (a) of § 27-42-12 states:
 "Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall first be required to exhaust his right under such a policy. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such insurance policy."